# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WHEELAND FAMILY LTD. PARTNERSHIP LP, *et al.*, | No. 4:18-CV-01976 |
| Plaintiffs and Counterclaim Defendants, | (Judge Brann) |
| v. | |
| ROCKDALE MARCELLUS LLC, | |
| Defendant and Counterclaim Plaintiff. | |

## MEMORANDUM OPINION

### JULY 3, 2019

Rockdale Marcellus LLC ("Rockdale") has moved for partial judgment on the pleadings. For the reasons that follow, that motion will be granted.

**I.    BACKGROUND**

Plaintiffs own various parcels of land in Tioga County, Pennsylvania,[1] and executed seven separate oil and gas leases with Rockdale's predecessor in interest, East Resources Inc.[2] East Resources Inc. conveyed its rights to SWEPI LP ("SWEPI"), and SWEPI later conveyed its rights to Rockdale.[3] Five of these leases—Leases 3 through 7—are at issue in the present motion.

---

[1]    Complaint (ECF No. 1-1) at ¶¶ 14-25.

[2]    *Id*. at ¶¶ 26-42.

[3]    *Id*. at ¶¶ 1-46.

During Leases 3–7 primary terms, which expired in 2011,[4] SWEPI pooled its interests into a drilling unit ("731 Unit") and began constructing a well ("731-IV Well") intending to drill into the Marcellus Shale.[5] Plaintiffs explain that drilling operations ceased in 2011, and the Department of Environmental Protection ultimately deemed the 731-IV Well inactive.[6] According to Plaintiffs, because of the well's non-production, Leases 3-7 expired in 2011.[7]

Rockdale, however, explains that despite the well's inactivity, Leases 3–7 have been extended pursuant to Rockdale and SWEPI's compliance with a so-called "shut-in" provision within each lease. According to Rockdale, because shut-in royalties have been tendered to each lessor, the leases did not expire.[8]

In 2018, Plaintiffs demanded that Rockdale surrender the leases.[9] Rockdale refused, arguing that the leases remain valid and enforceable.[10]

Plaintiffs filed a 21-count complaint in the Court of Common Pleas of Tioga County, Pennsylvania, seeking declaratory relief (Counts I, II, IV, V, VII, VIII, X, XI, XIII, XIV, XVI, XVII, XIX, XX) and to quiet title (Counts III, VI, IX, XII,

---

[4] *Id.* at ¶¶ 133, 163, 193, 225, 258. Leases 1 and 2 contained ten-year primary terms which expired in 2013, but those leases are not the subject of Rockdale's present motion. *Id.* at ¶¶ 74, 104.

[5] *Id.* at ¶¶ 47-52, 55.

[6] *Id.* at ¶ 59-60.

[7] *Id.* at ¶¶ 63-72, 133, 163, 193, 225, 258.

[8] Rockdale's Answer and Counterclaim (ECF No. 12) at ¶ 15-27.

[9] Complaint (ECF No. 1-1) at ¶ 71.

[10] *Id.* at ¶ 72.

XV, XVIII, XXI), and arguing that Rockdale's interest in the seven leases is either invalid or has expired.[11]  Rockdale filed an answer and alleged a counterclaim, seeking a declaration that the leases were held beyond their primary terms through payment of shut-in royalties.[12]  Plaintiffs answered Rockdale's counterclaim.[13]

Rockdale presently moves for partial judgment on the pleadings on counts VII-XXI of Plaintiffs' complaint and Count I of Rockdale's counterclaim.[14] Rockdale argues that, as a matter of law, it has successfully maintained the lease terms for Leases 3–7 by complying with the shut-in provision within each lease.[15] Plaintiffs disagree that the shut-in provision applies.[16]  Plaintiffs additionally argue that judgment on pleadings is inappropriate because factual questions linger as to whether the 731 Unit was pooled in good faith and whether the 731-IV Well was drilled pursuant to a valid lease given this Court's disposition in *Marshall Bros. Inc. v. Rockdale Marcellus LLC*.[17]

---

[11] *Id*. at ¶¶ 73-286.

[12] Rockdale's Answer and Counterclaim (ECF No. 12) at ¶¶ 28-31.

[13] Plaintiffs' Answer to Counterclaim (ECF No. 18).

[14] Rockdale Motion for Partial Judgment on the Pleadings (ECF No. 24).  The Court asked for supplemental briefing on various issues related to the present motion and commends counsel for both parties for answering the Court's inquiries thoroughly.

[15] Brief in Support (ECF No. 25).

[16] Brief in Opposition (ECF No. 30).

[17] No. 4:18-cv-01358, ECF No. 23 (M.D.Pa. January 1, 2019).

## II. DISCUSSION

### A. Standard of Review

When considering a motion for judgment on the pleadings,[18] a court draws all inferences from facts presented in the pleadings in favor of the nonmoving party.[19] Judgment will only be granted "if the movant clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law."[20]

### B. Under *Messner*, Rockdale Has Extended Leases 3-7 by Complying with the Shut-In Provision.

Plaintiffs argue that because a well can only be deemed shut-in if it was capable of producing hydrocarbons in paying quantities, a question of fact arises as to whether the 731-1V Well's productive capacity allowed Rockdale to invoke the shut-in provision and extend Leases 3–7 beyond their primary terms.[21] Rockdale, however, contends that because the shut-in provision expressly allowed Rockdale and SWEPI to shut-in a well when it was "otherwise not producing for any reason whatsoever," the shut-in provision's application is not predicated on whether the 731-1V Well was capable of production.[22]

---

[18] Federal Rule of Civil Procedure 12(c).

[19] *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290–91 (3d Cir. 1988).

[20] *Id.*

[21] Brief in Opposition (EFC No. 30) at 15.

[22] Brief in Support (ECF No. 25) at 7-10.

The shut-in royalty provision within Leases 3–7 provides as follows:

> If during or after the primary term of this lease, all wells on the leased premises or within a unit that includes all or a part of the lease premises, are shut-in, suspended or otherwise not producing for any reason whatsoever for a period of twelve (12) consecutive months, and there is no current production of oil or operations on said leased premises sufficient to keep this lease in force and this lease is not otherwise kept in force by other provisions of this lease, Lessee may maintain this lease in effect by tendering to Lessor a shut-in royalty equal to the Delay Rental as found elsewhere in this lease. Said shut-in royalty shall be paid or tendered to the Lessor within ninety (90) days after the next ensuing yearly anniversary of the Effective Date of this lease, and thereafter on or before each yearly anniversary of the Effective Date hereof while the wells are shut-in or production therefrom is not being marketed by Lessee. Upon payment of the shut-in royalty as provided herein, this lease will continue in force during all of the time or times while such wells are shut-in but failure to properly pay shut-in royalties shall [r]ender Lessee liable only for the amount due and shall not operate to terminate this lease.[23]

This Court has already confronted identical language and similar facts in *Messner v. Swepi*. There, a lessee and landowner entered into a lease bound by a five-year primary term.[24] Relying on the lease's shut-in provision, the lessee tendered shut-in royalties to the landowner after the leased acreage was pooled, two wells were drilled during the lease's primary term, and the wells were not

---

[23] *See* Leases 3-7 (ECF Nos. 26-12, 26-13, 26-14, 26-15, 26-16). The parties do not dispute that the leases contain this language and undisputed, authentic copies of these leases were filed by Rockdale as supplements to its notice of removal. Therefore we may consider these leases when adjudicating the present motion. *cf. Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir.1993) ("undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents").

[24] *Messner v. Swepi*, LP (*Messner I*), No. 4:13–CV–00014, 2013 WL 4417723, at *2 (M.D.Pa. 2013).

producing.²⁵ The landowner, however, refused to accept those payments and argued that the shut-in provision could not maintain the lease because the wells were not actually shut-in—that is, according to the landowner, the wells could not be shut-in because they were not capable of producing gas in paying quantities.²⁶ Considering the shut-in provision inapplicable, the landowner maintained that the lease has expired, and accused the lessee of wrongfully maintaining an interest in the property.²⁷

The *Messner* court disagreed with the landowner. The court explained that when interpreting an oil and gas lease under Pennsylvania law, principles of contract law are followed,²⁸ and the court consequently construes the lease "in accordance with the terms of the agreement as manifestly expressed,"²⁹ giving effect to the language's "accepted and plain meaning, rather than the silent intentions of the contracting parties."³⁰ The court noted that the shut-in provision's "expansive language" applied whenever a well was "not producing for any reason whatsoever," and explained that nothing in the lease conditioned the shut-in provision's application upon a factual finding as to whether the wells were, in fact,

---

25  *Id.*

26  *Id.*

27  *Id.* at *3.

28  *Id.* at *4 (quoting *T.W. Phillips Gas and Oil Co. v. Jedlicka,* 42 A.3d 261, 267 (Pa. 2012)).

29  *Id.* (quoting *J.K. Willison v. Consolidation Coal Company,* 637 A.2d 979, 982 (Pa. 1994)).

30  *Id.* (quoting *Jedlicka,* 42 A.3d at 261).

capable of producing in paying quantities.[31] Giving effect to the language used by the parties, the court concluded that the lessee maintained the lease beyond its primary term by invoking and complying with the shut-in royalty provision.[32] The court's reasoning and conclusion was affirmed, albeit non-precedentially, by the United States Court of Appeals for the Third Circuit.[33]

*Messner*'s reasoning controls here. *Messner* involved substantially similar facts, and the shut-in provision within Leases 3–7 is identical to the provision at issue in *Messner*. Like in the lease at issue in *Messner*, nowhere do Leases 3–7 condition the application of the shut-in provision on a factual finding as to whether the 731-1V was capable of producing hydrocarbons in paying quantities. Rather, Rockdale was authorized to invoke the expansive shut-in provision when, among other requirements, the well was "not producing for any reason whatsoever." Therefore, Plaintiffs cannot point to the 731-1V well's production capacity as a fact barring judgment on the pleadings.

Consequently, just as the *Messner* court accepted all factual allegations in the complaint as true which required dismissing the landowner's complaint, the pleadings here establish that Rockdale and SWEPI have complied with the shut-in provision within Leases 3–7. Leases 3–7 had five-year primary terms, the parcels

---

[31] *Id.* at *6.

[32] *Id.* at *8.

[33] *Messner v. Swepi, LP (Messner II),* 574 Fed.Appx. 96 (3d Cir. 2014).

subject to Leases 3–7 were pooled into the 731 Unit, the 731-1V well was drilled in the 731 Unit during the leases' primary terms, and the 731-1V well was not producing. Rockdale and SWEPI tendered to each lessor an annual shut-in royalty.[34] In sum, because the pleadings—even construed in Plaintiffs' favor—place this dispute squarely within the shut-in royalty provision, Rockdale, like the lessee in *Messner*, "properly exercised its right to maintain the lease in effect by tendering the shut-in royalty payment after wells that were drilled on the units were 'not producing for any reason whatsoever.'"[35]

Plaintiffs' distinguish *Messner* by calling it an "outlier," arguing that it constitutes non-binding authority that was wrongly decided.[36] The *Messner* decision encompasses the review of five federal judicial officers: the opinion and

---

[34] To the extent Plaintiffs either try to frame the tendering of shut-in royalty payments as a contested fact, *see, e.g.*, Plaintiffs' Supplemental Brief in Opposition to Motion for Partial Judgment on the Pleadings (ECF No. 39) at 21 n.17, or otherwise attempt to evade *Messner*'s applicability by making no mention of SWEPI and Rockdale's shut-in royalty payments in their complaint, those efforts do not create a material issue of fact precluding judgment on the pleadings in Rockdale's favor. When adjudicating a motion for judgment on the pleadings, the court "must accept as true all facts presented in the complaint and answer and draw all reasonable inferences in favor of the non-moving party." *Bedoya v. American Eagle Express Inc.*, 914 F.3d 812, 816 n.2 (3d Cir. 2019). Rockdale in its answer and counterclaim avers that it tendered the requisite shut-in royalties to Plaintiffs. *See* Rockdale's Answer and Counterclaim (ECF No. 12) at ¶¶ 22-26. Although the *Messner* plaintiff plead in his complaint that the lessee tendered to him a shut-in royalty that he refused to cash, Plaintiffs in their complaint do not allege that they were never paid or were paid in inadequate amount. Nor in their answer to Rockdale's counterclaim, which alleges that Rockdale and SWEPI tendered the requisite payments of shut-in royalties under Leases 3–7, do Plaintiffs deny that those checks were cashed. Accordingly, on this issue, the record supports only one inference: Rockdale and SWEPI tendered to Plaintiffs an annual shut-in royalty as required by the shut-in provision in Leases 3–7.

[35] *Messner I*, 2013 WL 4417723, at *5.

[36] Brief in Opposition (ECF No. 20) at 23-26.

order was originally authored as a report and recommendation by a United States Magistrate Judge, it was later adopted in full by a United States District Judge, and finally, it was wholly affirmed by a three-judge panel on the Third Circuit. Although the Third Circuit affirmed *Messner* in a nonprecedential opinion, it nevertheless remains highly persuasive as the *Messner* court confronted nearly the same legal issues and facts that are present here. Insofar as *Messner* should be revisited, that issue is best left to our Court of Appeals.

In sum, Rockdale has met its burden to show that no material issues of fact exist as to whether Rockdale properly exercised its rights to extend Leases 3–7 by invoking the shut-in provisions therein. Accordingly, Rockdale is entitled to judgment on the pleadings on counts VII-XXI of Plaintiffs' complaint and Count I of Rockdale's counterclaim, to the extent Count I is based on Leases 3–7.

**C. Plaintiffs' Allegations of Bad Faith Do Not Preclude Judgment on the Pleadings.**

Plaintiffs argue that judgment on the pleadings is improper because whether Leases 3–7 were pooled in good faith and in accordance with the leases' terms is a question of fact.[37]

Plaintiffs argument cannot forestall judgment on the pleadings for two reasons. Pennsylvania law recognizes that the covenant of good faith and fair

---

[37] Brief in Opposition (ECF No. 30) at 9-10. Plaintiffs cite to no Pennsylvania authority to support their position.

dealing is implied in every contract.[38] To the extent Plaintiffs have styled their bad faith allegations as independent claims alleging breach of the implied covenant,[39] that covenant "gives rise to no independent action aside from breach of contract."[40] For example, in *Stewart v. Swepi*, landowners alleged that a lessee breached the covenant of good faith and fair dealing, arguing that an oil and gas lease expired because "the last-minute unitization of [two] parcels with the [drilling unit], and the drilling of the alleged placeholder well, were speculative in nature and failed to extend the lease."[41] Critically, the court noted, the landowners did not allege that the lessor breached the terms of the lease.[42] The court dismissed the landowners' claim for breach of the covenant of good faith and fair dealing "because plaintiffs have not alleged breach of contract."[43]

Here, it does not appear that Plaintiffs claim that Rockdale breached the terms of Leases 3–7. Instead, Plaintiffs' complaint contends that Rockdale acted in bad faith because the unitization of Leases 3–7 in the 731 unit "occurred approximately one month prior to the conclusion of the primary term" of the

---

[38] *John B. Conomos, Inc. v. Sun Co., Inc.,* 831 A.2d 696, 706 (Pa.Super.Ct. 2003).

[39] *See, e.g.*, Complaint (ECF No. 1-1) at ¶ 154 ("In the alternative, Plaintiff Wheeland Family Limited Partnership, L.P., requests a declaration and/or determination from this Honorable Court that the unitization of Wheeland Lease 3 in the 731 Unit was in bad faith, and thereby, a nullity…"); *see also* ¶¶ 184, 214, 248, 279.

[40] *Zaloga v. Provident Life and Accident Ins. Co. of America,* 671 F.Supp.2d 623, 631 (M.D.Pa. 2009).

[41] *Stewart v. Swepi*, 918 F.Supp.2d 333, 344 (M.D.Pa. 2013).

[42] *Id.* at 344.

[43] *Id.* at 344.

leases, and the 731 Unit was centered around a well that was not producing and could not produce hydrocarbons.[44]  Under *Stewart*, claims asserted by Plaintiffs for breach of the covenant of good faith and fair dealing cannot survive because it does not appear that Plaintiffs allege breach of contract claims.[45]

Alternatively, to the extent Plaintiffs have alleged breach of contract and their bad faith pooling claims are cognizable, the duty of the implied covenant of good faith and good dealing "cannot trump the express provisions of the contract."[46]  Here, the implied obligation of good faith and fair dealing cannot usurp express rights conferred to SWEPI and Rockdale under Leases 3–7.  Those leases expressly authorized the pooling that occurred and allowed SWEPI and Rockdale to extend their primary terms by tendering shut-in royalties if the 731-IV Well was not producing for any reason whatsoever.  As discussed above, by tendering to Plaintiffs the requisite shut-in royalties after the 731-IV Well drilled in the 731 Unit was not producing, Rockdale has properly exercised its rights under Leases 3–7.[47]

---

[44] *See, e.g.*, Complaint (ECF No. 1-1) at ¶¶ 154, 184, 214, 248, 279.

[45] *Stewart*, 918 F.Supp.2d at 344.

[46] *Conomos*, 831 A.2d at 706.

[47] *See Stewart*, 918 F.Supp.2d at 341 (suggesting that if lessor did not allege that he did not received shut-in royalties in complaint, and if lessee raised claims of payment in answer, lessor's bad faith pooling claim would not be cognizable because lessee would be deemed to have complied with the express terms of the lease).

In sum, Rockdale has met its burden to show that Plaintiffs' theories regarding Rockdale's alleged bad faith pooling do not present any material issue of fact precluding judgment as a matter of law in Rockdale's favor.

### D. *Marshall Bros. Inc. v. Rockdale Marcellus LLC* Does Not Preclude Judgment on the Pleadings.

Plaintiffs argue that judgment on the pleadings is improper because factual questions exist as to whether the 731-1V Well was drilled pursuant to a valid lease.[48] This factual dispute, according to Plaintiffs, is located in this Court's prior disposition in *Marshall Bros. Inc. v. Rockdale Marcellus LLC*, a different case involving the 731-1V Well in which this Court's concerns regarding the chain of assignments of mineral rights precluded judgment on the pleadings. Plaintiffs argue that if the lease at issue in *Marshall Bros.* was not properly transferred to Rockdale and its predecessors in interest, then the 731-1V Well was not authorized, and consequently, cannot be used to extend the leases beyond their primary terms in the case at bar.[49]

Here, however, Plaintiffs' complaint does not question the validity of Leases 3–7 due to defects in the chain of assignments between Rockdale and its predecessors in interest. It is beyond question that Plaintiffs may not attempt to amend their complaint by advancing new arguments in a brief opposing a

---

[48] Brief in Opposition (ECF No. 30) at 6-9.

[49] *Id.* at 4-9 (citing *Marshall Bros. Inc. v. Rockdale Marcellus LLC*, No. 4:18-cv-01358, ECF No. 23 (M.D.Pa. January 1, 2019)).

dispositive motion.[50] If Plaintiffs wished to challenge Rockdale's assignment chain, as the plaintiffs in *Marshall Bros.* did, Plaintiffs here should have amended their complaint. Plaintiffs did not do so, and accordingly, cannot manufacture a novel factual dispute to defeat judgment on the pleadings.

Additionally, nothing in Leases 3–7 supports Plaintiffs' contention that even if the lease in *Marshall Bros.* was not properly assigned, then the 731-1V Well was improvidently drilled. The plain language of the leases states that Rockdale and its predecessors in interest could pool Leases 3–7 with "any other property" and that "drilling … shall be treated as if it were … on the leased premises."[51] Therefore, I cannot conclude that a purported title defect within the 731 Unit creates an issue of fact calling into question Rockdale's rights to invoke the shut-in provision and extend the terms of Leases 3–7.

In sum, Rockdale has met its burden to show that Plaintiffs' theories regarding the assembly of the 731 Unit do not present any material issue of fact precluding judgment as a matter of law in Rockdale's favor.

---

[50] *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting that it "is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); *Warfield v. SEPTA*, 460 Fed.Appx. 127, 132 (3d Cir. 2012) (holding that a "plaintiff may not amend a complaint by raising arguments for the first time in a brief in opposition to a motion for summary judgment").

[51] *See* Leases 3–7 (ECF Nos. 26-12, 26-13, 26-14, 26-15, 26-16).

## III. CONCLUSION

For the reasons discussed above, Rockdale has established its entitlement to partial judgment on the pleadings on Counts VII-XXI of Plaintiffs' complaint and Count I of Rockdale's counterclaim, to the extent Count I is based on Leases 3–7.[52] An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[52] Rockdale's motion for a hearing regarding the instant motion for partial judgment on the pleadings, ECF No. 43, will be denied as moot.